IN THE SUPREME COURT
OF THE VIRGIN ISLANDS

**FILED**

June 15, 2026 02:05 PM
SCT-Civ-2025-0026
**DALILA E. PATTON, ESQUIRE**
**CLERK OF THE COURT**

For Publication

# IN THE SUPREME COURT OF THE VIRGIN ISLANDS

GOVERNMENT OF THE VIRGIN ISLANDS,
BUREAU OF CORRECTIONS,

    Appellant/Plaintiff/Counter Defendant.

v.

UNITED INDUSTRIAL, SERVICE,
TRANSPORTATION, PROFESSIONAL AND
GOVERNMENT WORKERS OF NORTH
AMERICA / SEAFARERS INTERNATIONAL
UNION OF NORTH AMERICA, ATLANTIC
GULF, LAKES AND INLAND WATERS
DISTRICT, AFL-CIO,

    Appellee/Defendant/Counter Plaintiff.

S. Ct. Civ. No. 2025-0026
Re: Super. Ct. Civ. No. 464/2022 (STX)

On Appeal from the Superior Court of the Virgin Islands
Division of St. Croix
Superior Court Judge: Hon. Douglas A. Brady

Argued: November 10, 2025
Filed: June 15, 2026

Cite as: 2026 VI 14

BEFORE:     **RHYS S. HODGE**, Chief Justice; **IVE ARLINGTON SWAN**, Associate Justice; and **HAROLD W.L. WILLOCKS,** Associate Justice.

APPEARANCES:

**Zuleyma Chapman, Esq.**
Office of Collective Bargaining
St. Croix, U.S. Virgin Islands
    *Attorney for Appellant/Plaintiff/Counter Defendant.*

**John J. Merchant, Esq.**
Seafarers International Union
St. Thomas, U.S. Virgin Islands
    *Attorney for Appellee/Defendant/Counter Plaintiff.*

## OPINION OF THE COURT

WILLOCKS, Associate Justice.

¶ 1　　Appellant Government of the Virgin Islands ("GVI") appeals from the April 7, 2025 order of the Superior Court of the Virgin Islands ("Superior Court") confirming an arbitration award entered in favor of Appellee United Industrial, Service, Transportation, Professional and Government Workers of North America / Seafarers International Union of North America, Atlantic Gulf, Lakes and Inland Waters District, AFL-CIO ("Union") that sustained its grievances challenging the Bureau of Corrections' ("BOC")[1] overtime calculations. For the reasons that follow, this Court affirms the Superior Court's April 7, 2025 order.

## I. BACKGROUND

¶ 2　　In 2013, the Union, the exclusive bargaining representative for correction officers employed by BOC and the Youth Rehabilitation Center of the Department of Human Service ("YRC"), and GVI entered into a collective bargaining agreement ("CBA") effective for the period of October 1, 2009 through September 30, 2014. The CBA governed the terms and conditions of employment, such as wages, benefits, working hours, overtime, employee grievances, and the process for dispute resolution.

¶ 3　　Specifically, Article IX of the CBA contains a four-step grievance procedure, which ultimately provides for binding arbitration should the parties fail to resolve their differences. Section 8 of the CBA's grievance article provides that "[t]he Arbitrator shall have jurisdiction and authority only to interpret, apply or determine compliance with the express provisions of this

---

[1] For purposes of this Opinion, references to "GVI" refer to the appellant/plaintiff, while references to "BOC" refer to the public employer Bureau of Corrections. *See* 3 V.I.C. § 372 ("There is established in the executive branch of the Government of the Virgin Islands, the Bureau of Corrections."); *see also*, 24 V.I.C. § 362(i) (specifying that "'employer' or 'public employer' means the executive branch of the Government of the Virgin Islands and any agency or instrumentality thereof...").

Agreement and shall not have authority to add to, detract from, or alter its provisions in any way."

(J.A. 048). The CBA's arbitration provisions contain no reference to the Federal Arbitration Act.

(J.A. 047-49).

¶ 4     Between 2012 and 2013, the Union filed grievances on behalf of several BOC correction

officers, challenging BOC's method of calculating overtime as contrary to the CBA and asserting

that the officers were incorrectly compensated as a result. The grievances were consolidated and

arbitrated before Arbitrator Barry Goldman ("Arbitrator"). An arbitration hearing was held from

January 25–27 and April 21–23, 2022, after which the parties submitted closing briefs. The sole

question before the Arbitrator was the proper method of calculating overtime under the CBA—a

question that would ultimately resolve the issues raised in the grievances. (J.A. 092, 111, 139).

¶ 5     On July 19, 2022, the Arbitrator issued an opinion and award ("Arbitration Award")

sustaining the Union's grievances. In reaching his decision, the Arbitrator examined Article II,

section 2 of the CBA related to overtime pay, which provides:

> Wages at the rate of one and one-half (1½) times the employee's straight time hourly wage rate shall be paid in the following instances, providing overtime has been approved in writing by the supervisor of the unit:
>
> A. Work performed in excess of eight (8) hours in any one (1) Work Day;
>
> B. Work performed in excess of forty (40) hours in any one (1) Work Week.
>
> Wages at the rate of two (2) times the employee's straight time hourly wage shall be paid for work performed in excess of forty-eight (48) hours in a Work Week.

(J.A. 027, 138).

¶ 6     The Arbitrator noted that the parties offered conflicting interpretations of this provision:

the Union maintained that the CBA requires "the employer to pay overtime for every hour worked

over 8 hours in a day and for every hour worked over 40 hours in a week," whereas GVI contended

that overtime should be calculated at the end of the workweek—after 40 straight-time hours—with overtime pay "based upon the excess of total hours over eight (8) hours in a workday or 40 hours a week whichever provides the greater compensation," and that such pay must include effects on retirement, sick leave, and vacation benefits. (J.A. 139). After addressing GVI's arguments concerning "pyramiding,"[2] "custom and practice," and benefits impact, the Arbitrator concluded that GVI's method of computing overtime was inconsistent with the CBA.

¶ 7    On September 29, 2022, GVI filed a complaint seeking to vacate the Arbitration Award. Count I sought a declaratory judgment that GVI "is not bound" by the award, and Counts II through VII asserted alternative bases for vacatur, specifically: that the Arbitrator exceeded his authority (Count II); that the Arbitration Award was the product of partiality of the Arbitrator (Count III); that the Arbitrator disregarded the plain language of the CBA (Count IV); that the Arbitrator manifestly disregarded Virgin Islands law (Count V); that the Arbitration Award fails to satisfy the test of fundamental rationality (Count VI); and that the Arbitration Award violates public policy (Count VII).

¶ 8    On November 3, 2022, the Union filed its answer in response to GVI's complaint and included a two-count counterclaim seeking confirmation and enforcement of the Arbitration Award (Count I) and unfair labor practice (Count II).

---

[2] "Pyramiding" in the labor context refers to the duplication of overtime pay for the same hours worked. As stated in the Arbitration Award, "Pyramiding is 'paying overtime on overtime' for instance by paying both daily and weekly overtime for the same hours of work." (J.A. 139).

¶ 9     On November 22, 2022, GVI filed its answer to the Union's counterclaim. The parties filed a joint submission of the factual record on April 26, 2024, followed by a supplemental submission on May 22, 2024.[3]

¶ 10    On April 7, 2025, the Superior Court entered an order ("April 7, 2025 Order") confirming the Arbitration Award and declaring it enforceable. The court also dismissed with prejudice GVI's complaint as to all counts, entered judgment in favor of Count I of the Union's counterclaim seeking confirmation of the Arbitration Award, and dismissed Count II of the Union's counterclaim alleging unfair labor practices. In reaching its decision, the court limited its review to determining whether the Arbitrator exceeded his authority or manifestly disregarded the law and concluded that the Arbitrator did neither.[4] (J.A. 017-21).

¶ 11    On May 5, 2023, GVI filed a timely notice of appeal of the April 7, 2025 Order. *See* V.I. R. APP. P. 5(a)(1) ("In a civil case in which an appeal is permitted by law as of right from the Superior Court to the Supreme Court, the notice of appeal required by Rule 4 shall be filed with the Clerk of the Supreme Court within 30 days after the date of entry of the judgment or order appealed from; but if the Government of the Virgin Islands or the United States of America or an officer or agency thereof is a party, the notice of appeal may be filed by any party within 60 days

---

[3] In the interim, the Union filed a motion seeking enforcement of the Arbitration Award on May 28, 2024, and GVI filed a memorandum in support of vacatur on July 12, 2024. In response, the Union filed its opposition on September 30, 2024, and GVI filed its reply and another memorandum in support of vacatur on March 4, 2025. The Superior Court's April 7, 2025 Order made no mention of these filings when ruling on GVI's complaint and the Union's counterclaim.

[4] In the April 7, 2025 Order, the Superior Court noted that "GVI does not reference the three grounds for vacatur enunciated by the Supreme Court in [*Gov't of the V.I., Dep't of Ed. v. St. Thomas/St. John Educ. Adm'rs Ass'n, Local 101 o.b.o. Forde*, 67 V.I. 623 (V.I. 2017)], but its argument touches on the first and third grounds, without presenting any facts or arguments on the second ground[,] that the Award was the product of fraud, partiality, or malfeasance." (J.A. 017).

after such entry."). In its notice of appeal, GVI stated that "[t]he issue to be presented on appeal is whether there are disputed facts in the matter sub judice." (J.A. 010).

## II. DISCUSSION

### A.  Jurisdiction

¶ 12    The Revised Organic Act of 1954 provides this Court with appellate jurisdiction over "all appeals from the decisions of the courts of the Virgin Islands established by local law. . . ." 48 U.S.C. § 1613a(d). Title 4, section 32(a) of the Virgin Islands Code vests this Court with jurisdiction over "all appeals arising from final judgments, final decrees or final orders of the Superior Court [of the Virgin Islands], or as otherwise provided by law." 4 V.I.C. § 32(a). An "order that disposes of all claims submitted to the Superior Court [of the Virgin Islands] is considered final for the purposes of appeal." *Jung v. Ruiz*, 59 V.I. 1050, 1057 (V.I. 2013) (citing *Matthew v. Herman*, 56 V.I. 674, 677 (V.I. 2012)); *see also, Beachside Assocs., LLC v. Fishman*, 53 V.I. 700, 706-07 (V.I. 2010) ("The general rule is that a decision is considered final when it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"); *Estate of George v. George*, 50 V.I. 268, 274 (V.I. 2008) (quoting *Berke v. Bloch*, 242 F.3d 131, 134 (3d Cir. 2001)). The April 7, 2025 Order dismissed with prejudice GVI's complaint seeking vacatur of the Arbitration Award. Hence, the order constituted a final judgment resolving all claims submitted for adjudication in the underlying matter and thereby conferred appellate jurisdiction upon this Court. *See SBRMCOA, LLC v. Beachside Assocs., LLC*, 78 V.I. 846, 850 (V.I. 2024) ("[T]he denial of a motion to vacate an arbitration award constitutes a final judgment for purposes of section 32(a).") (quoting *Tremcorp Holdings, Inc. v. Harris*, 65 V.I. 364, 367 (V.I. 2016)).

*GVI v. Seafarers International Union*        2026 VI 14
S. Ct. Civ. No. 2025-0026
Opinion of the Court
Page 7 of 14

## B. Overview of Issues

¶ 13     On appeal, GVI asserts that the Superior Court erred in entering its April 7, 2025 Order confirming the Arbitration Award. Specifically, GVI challenges the court's determination that the Arbitrator neither exceeded his authority nor manifestly disregarded the law.

## C. Standard of Review

¶ 14     "When reviewing the Superior Court's decision to confirm an arbitration award, we exercise plenary review over the Superior Court's application of the law and review any findings of fact for clear error." *SBRMCOA, LLC*, 78 V.I. at 850 (quoting *Gov't of the V.I., Dep't of Ed. v. St. Thomas/St. John Educ. Adm'rs Ass'n, Local 101 o.b.o. Forde* (*"Forde"*), 67 V.I. 623, 628 (V.I. 2017)). "Clear error is a very deferential standard; an appellate court should only reverse a factual determination as being clearly erroneous if it is completely devoid of minimum evidentiary support or ... bears no rational relationship to the supportive evidentiary data." *In re Estate of Small*, 57 V.I. 416, 430 (V.I. 2012) (internal quotation marks and citations omitted).

## D. Grounds for Vacatur

¶ 15     Here, the parties did not explicitly contract for the Federal Arbitration Act ("FAA") to govern the parties' arbitration proceedings. Thus, we apply the common law standard for judicial review of a binding arbitration award articulated in *Forde*.

¶ 16     Under that standard, the Superior Court may only vacate the award if: "(1) the arbitrator exceeded his or her authority in rendering the award (which may include ignoring limits in the arbitration agreement itself on issues to be arbitrated or remedies the parties agreed to make available); (2) if the award was the product of fraud, partiality, or malfeasance on behalf of the parties or the arbitrator—or if the award was predicated upon a mistake flowing from such conduct; or (3) if the arbitrator manifestly disregards the law." *Forde*, 67 V.I. at 639-40.

¶ 17     This limited review "ensure[s] that parties who bargain for binding arbitration receive the benefit of their bargain." *Id.* at 639. "[S]o long as an award derives from the legitimate exercise of an arbitrator's power, a court may not alter an award based on its own notions of justice or sound public policy, as doing so evidences a judicial disregard for the parties' chosen form of dispute resolution." *Id.*

¶ 18     We now turn to GVI's appeal. Our role is not to review the merits of the arbitrator's award. *Cf. Forde*, 67 V.I. at 628 ("In order to review the Superior Court's decision, we must first ascertain what deference, if any, the Superior Court was required to afford to the arbitrator's award. Only once we identify the appropriate level of deference may we determine whether the Superior Court complied."); *see United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987) ("[C]ourts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract."). Instead, our only task is to assess whether the Superior Court erred in determining that the Arbitrator neither exceeded his authority nor manifestly disregarded the law in ultimately confirming the Arbitration Award.

### 1. Scope of Authority

¶ 19     According to GVI, "[t]he arbitrator manifestly exceeded his authority by impermissibly adding 'and' to join subsections A and B in the overtime provisions…allowing for pyramiding of overtime hours." (Appellant's Br. 11). GVI further contends that the Arbitration Award "fails to conform with the CBA and inherent guidelines applicable to public sector arbitration," thereby exceeding the Arbitrator's authority under the CBA. (Appellant's Br. 15).

¶ 20     In response, the Union disputes that the Arbitrator's interpretation "requires adding extra words and considerations," and points out that the Superior Court found the Arbitrator's

interpretation "sound" but nevertheless noted that "[e]ven if it were not...vacatur is improper as a misinterpretation of the contract or a mistaken application of the law does not expose an award to judicial review." (Appellee's Br. 14). As to GVI's public sector argument, the Union maintains that it is newly raised "for the first time on appeal" and should be deemed waived. (Id.)

¶ 21　In the April 7, 2025 Order, the Superior Court concluded that GVI has "clearly not shown that the Arbitrator exceeded his authority" under the CBA. The court noted that the Arbitrator expressly found that "'there is simply no ambiguity in th[e] language' employed by the parties in crafting the CA." (J.A. 019). The court further observed that "the Arbitrator acted in conformity with the intent of the parties as expressed by the terms of the CBA 'to interpret, apply or determine compliance with the express provisions of [the CBA]'" and that "[t]he scope of the [Arbitration] Award was limited to the interpretation and application of the express provisions to which the parties agreed in fashioning the CBA." (J.A. 018-19).

¶ 22　To determine whether an arbitrator exceeded his or her powers, courts look to the contract because, "[a]s the best indication of the parties' intent, the language of the contract itself defines the scope of an arbitrator's authority." *Forde*, 67 V.I. at 638. The CBA explicitly delegates to an arbitrator the authority "to interpret, apply or determine compliance with the express provisions of this Agreement." (J.A. 048). Here, the Arbitrator interpreted the overtime provision under the CBA and found that "the language of the CBA [is] clear and unambiguous" and that "Correction Officers are to be paid 1.5 times their regular hourly rate for work performed in excess of 8 hours in a day and for work performed in excess of 40 hours in a week," with "no requirement that they be paid 40 hours at straight time before there are eligible for overtime." (J.A. 143).

¶ 23　GVI's argument contesting the Arbitrator's reading of the CBA is therefore unpersuasive. In asserting that the Arbitrator impermissibly added the word "and" to join subsections A and B

of the overtime provisions, GVI is merely substituting its own construction of the CBA for the Arbitrator's. This Court has held that "[t]he fact that a party—or even a reviewing court—merely disagrees with how an arbitrator interprets a contract is not sufficient grounds to vacate the arbitrator's decision." *Forde*, 67 V.I. at 641. Ultimately, this dispute concerns the interpretation of the CBA's overtime provision, and it is the Arbitrator's interpretation that the parties bargained for when they contracted to delegate to an arbitrator the authority "to interpret, apply or determine compliance with the express provisions of this Agreement." (J.A. 048).

¶ 24    As to GVI's public sector agreement, we agree with the Union that it is raised for the first time on appeal. GVI never raised the public sector argument before the Superior Court. This omission deprived the Union of an opportunity to respond at the trial level and prevented the Superior Court from considering and ruling on the issue. As this Court has held, "[a]ppellate courts generally refuse to consider issues that are raised for the first time on appeal . . . . Furthermore, on appeal to this Court, the scope of our review is restricted to those questions that were properly preserved for review in the trial court and further raised on appeal according to the rules of this Court." *Bryan v. Gov't of the V.I.*, 56 V.I. 451, 457 (V.I. 2012) (quoting *Daniel*, 49 V.I. at 335-36). Thus, this argument is deemed waived. *See* V.I. S. Ct. R. 4(h) ("Only issues and arguments fairly presented to the Superior Court may be presented for review on appeal."); *see also*, V.I. R. App. P. 22(m) ("Issues that were (1) not raised or objected to before the Superior Court, (2) raised or objected to but not briefed, or (3) are only adverted to in a perfunctory manner or unsupported by argument and citation to legal authority, are deemed waived for purposes of appeal, except that the Supreme Court, at its option, may notice an error not presented that affects substantial rights.").

¶ 25    Accordingly, the Superior Court did not err in determining that the Arbitrator did not exceed his authority.

### 2. Manifest Disregard of the Law

¶ 26    According to GVI, the Arbitrator's acceptance of the Union's interpretation of the CBA's overtime provision allows "pyramiding," contrary to both the Virgin Islands Fair Labor Standards Act ("VIFLSA") and the federal Fair Labor Standard Act ("FLSA"), thereby demonstrating a manifest disregard of the law. (Appellant's Br. 16, 19).

¶ 27    In response, the Union cites the deferential standard of judicial review applicable to binding arbitration awards, as articulated in *Forde*, 67 V.I. at 639. (Appellee's Nr. 15). The Union further argues that "it remains unclear what law was so manifestly disregarded" by the Arbitrator and also noted that "the plain language of section 19 [of the VIFLSA] demonstrates the intent of the drafters of VIFLSA to create default rules that do not impede Virgin Islands Correction Officers from collective bargaining or more favorable terms." (Id. at 16).

¶ 28    In the April 7, 2025 Order, the Superior Court rejected GVI's claim that the Arbitrator's reading of the CBA's overtime provision violated the VIFLSA, stating that "[e]ven if GVI's argument that employees have one of two overtime options but not both were deemed meritorious, which it is not in light of the plain language of CBA Art III, Section 2, the statutory provision of section 19 [of VIFLSA] clearly exempts the parties' agreement for which they collectively bargained from the constraints of the VIFLSA relative to establishing wage compensation."[5] (J.A.

---

[5] The VIFLSA provides in relevant part:

> Nothing in this chapter shall be deemed to interfere with, impede, or in any way diminish, the right of employees to bargain collectively with their employers through representatives of their own choosing in order to establish wages or other conditions of work in excess of the applicable minimum under the provisions of this chapter.

020). The Superior Court further concluded that "[b]y finding that the CBA language was clear and unambiguous, the Arbitrator followed rather than disregarded the law by declining to look outside the language chosen by the parties to determine the method to calculate overtime." (J.A. 021).

¶ 29 "It [i]s well-established that to obtain vacatur of an arbitration award based on a manifest disregard for the law, the party seeking vacatur was required to prove (1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrator[ ] refused to heed that legal principle." *SBRMCOA, LLC*, 78 V.I. at 853 (internal quotation marks and citations omitted).[6]

¶ 30 GVI's claim that the Arbitration Award should be vacated for the Arbitrator's alleged manifest disregard of the VIFLSA is unpersuasive. First, GVI's argument rests on the premise that the Union's interpretation of the CBA's overtime provision—which the Arbitrator adopted— permits pyramiding, or duplication of overtime pay for the same hours worked. However, the Arbitrator explicitly found that the Union's reading does not require pyramiding, stating that it "does not require paying overtime on overtime, and it does not require paying two types of

---

24 V.I.C. § 19.

[6] In *SBRMCOA, LLC*, we observed that "it is highly unclear whether the Superior Court or this Court even possesses the authority to review an arbitrator's decision for a manifest disregard of the law." 78 V.I. at 852. In that case, the parties had unequivocally contracted for the Federal Arbitration Act ("FAA") to govern the arbitration proceedings. We explained that "[a]lthough the FAA sets forth several bases for vacating an arbitration award, manifest disregard of the law is not one of them," and noted that "in 2008 the United States Supreme Court strongly questioned whether manifest disregard represents an independent nonstatutory ground for vacating an arbitration award." *Id.* at 852-53 (citing *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576, 585 (2008)).

However, we need not reach the issue of whether "manifest disregard of the law" is subject to judicial review in this instance because we have recognized it as a common law basis for vacating an arbitration award where the FAA does not apply, as is the case here.

overtime for the same hours of work." (J.A. 139). The Arbitrator further explained that "the Union's reading requires the Employer to pay overtime for every hour an employee works over 8 hours in a day and for every hour over 40 hours in a week[;][i]it does not require any hour to be counted twice [because]… the overtime premium [is] paid for every hour in which either condition is met." (J.A. 139-40). GVI does not address this finding but rather proceeds on its own assumption that the Union's interpretation necessarily results in pyramiding.

¶ 31    Second, GVI fails to satisfy its burden as the party seeking vacatur. To prevail, GVI must "prove (1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrator[ ] refused to heed that legal principle." *SBRMCOA, LLC*, 78 V.I. at 853. GVI cites no relevant VIFLSA provision, identifies no clearly defined legal principle, and does not demonstrate that the Arbitrator ignored any legal requirement. Accordingly, its argument that the Arbitration Award reflects a manifest disregard of law in general, or of the VIFLSA in particular, fails.

¶ 32    GVI's claim that the Arbitration Award should be vacated for the Arbitrator's alleged manifest disregard of the FLSA appears to have been raised for the first time on appeal. While the Union alluded to the FLSA in its opposition to GVI's July 12, 2024 memorandum in support of vacatur (J.A. 174-189), GVI never presented the issue to the Superior Court. As a result, the Superior Court had no occasion to consider or rule on the alleged FLSA violation, as evidenced by its lack of discussion in the April 7, 2025 Order. Accordingly, this argument is deemed waived. *Bryan*, 56 V.I. at 457; *see also* V.I. S. CT. R. 4(h); V.I. R. APP. P. 22(m).

¶ 33    Accordingly, the Superior Court did not err in determining that the Arbitrator did not manifestly disregard the law.

### III. CONCLUSION

¶ 34    Because the Superior Court correctly determined that the Arbitrator acted within the scope

of his authority under the CBA and that the Arbitrator did not manifestly disregard the law, we

affirm the Superior Court's April 7, 2025 Order confirming the Arbitration Award.

**Dated this 15th day of June, 2026.**

**BY THE COURT:**

**HAROLD W.L. WILLOCKS**
**Associate Justice**

**ATTEST:**

**DALILA E. PATTON, ESQ.**
**Clerk of the Court**
**By:**

**Deputy Clerk II**

**Dated:** 6-15-2026